# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GERONIMO LOZANO,**<br><br>                              **Plaintiff,**<br><br>         **v.**<br><br>**STATE OF NEW JERSEY, ELIZABETH POLICE DEPARTMENT, SERGEANT RODNEY DORILUS, OFFICER DAVID HERNANDEZ, POLICE OFFICER TIMOTHY GOLDATE, UNION COUNTY, AND JOHN & JANE DOE 1-10, ABC CORP. 1-10 (fictitious names for persons, firms or corporations presently unknown),**<br><br>                              **Defendants.** | No. 17-cv-6581 (KM)(JBC)<br><br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This action arises from the allegedly unconstitutional arrest, detention, and prosecution of plaintiff Geronimo Lozano by several officers of the Police Department of Elizabeth, New Jersey. Mr. Lozano alleges that the officers arrested and detained him without probable cause, in violation of certain rights afforded to him by the United States Constitution, New Jersey State laws, and common law. On August 15, 2017, Mr. Lozano filed a complaint against the State of New Jersey, the Elizabeth Police Department, Sergeant Rodney Dorilus, Officer David Hernandez, Police Officer Timothy Goldate, Union County, and various fictitious parties in the Superior Court of New Jersey, Union County. Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. (DE 1). This court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over pendent state law claims under 28 U.S.C. § 1367. By Consent Order (DE 4), I

dismissed Union County as a party defendant.[1] Now before the Court are motions for summary judgment filed by Defendants David Hernandez (DE 24), Timothy Goldate (DE 25), Rodney Dorilus (DE 26), and the Elizabeth Police Department (or rather the City of Elizabeth)[2] (DE 27). Plaintiff has filed an opposition to Defendants' motions for summary judgment (DE 30), and Defendants have filed separate reply briefs. (*See* DE 32, 33, 34 and 35.)

For the reasons set forth below, I will grant in part and deny in part the summary judgment motions of Hernandez and Dorilus. (DE 24, 26) I will grant in full the summary judgment motions of Goldate and the City of Elizabeth. (DE 25, 27.)

## I.    BACKGROUND[3]

On these motions for summary judgment, I will construe the facts in the light most favorable to the non-movant, plaintiff Lozano. *See Johnson v. Knorr*, 477 F.3d 75, 78 (3d Cir. 2007).

---

[1]     The parties stipulated that the dismissal of Union County was without prejudice. Plaintiff has never sought to reinstate Union County, however.

[2]     The proper defendant is not the Elizabeth Police Department, but the City of Elizabeth (the "City"). The Elizabeth Police Department is not a "person" subject to liability under § 1983. More generally, a New Jersey police department is not an independent entity with the capacity to sue and be sued, but only "an executive and enforcement function of municipal government." N.J. Stat. Ann. § 40A:14–118. *See also Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir.1997) ("Court "treat[s] the municipality and its police department as a single entity for purposes of section 1983 liability"); *Jefferson v. Elizabeth Police Dep't*, No. CIV. 15-1086 KM MAH, 2015 WL 733688, at *3 (D.N.J. Feb. 19, 2015). I will therefore refer to this defendant as the City. There is no change in substance.

[3]     Record items will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated.

|  |  |
|---|---|
| "DE __" = | Docket Entry in this case |
| "Compl." = | Complaint (DE 1) |
| "Opposition" = | Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (DE 30) |
| "CMF" = | Plaintiff's Counterstatement of Material Facts (DE 31) |

The plaintiff, Geronimo Lozano, is a former Marine, discharged from the Corp for medical reasons, and he suffers from a number of injuries and medical impairments. On October 12, 2016, Mr. Lozano was at a Wawa convenience store located in Elizabeth, NJ. (*See* DE 24, Pl. Depo., Exh. B at 31:15–32:3.) Time stamps on receipts suggest that Mr. Lozano had been eating at the convenience store from approximately 2 AM until 3 AM. (*See* DE 31-3.) When Defendant Sergeant Dorilus arrived at the Wawa to refuel his car, he saw Mr. Lozano's car parked partly within a handicapped parking space and partly in the adjacent restricted area. (DE 26-3, Exh. C, Dorilus Tr. at 18:4–18; 38:15–20; *Id.*, Exh. D AXON_Body_Video_2016-10-12_0320 at 00:35; 2:09–22.)[4] On the dashboard beneath the windshield of Lozano's car, there was a valid handicapped placard which would entitle him to park in a handicapped space. Because the car has tinted windows, permitted for medical reasons, Sgt. Dorilus could not see the handicapped placard as he approached Lozano's vehicle. (*Id.*, Exh. C, Dorilus Tr. 40:18–21.) Upon Sgt. Dorilus's request, Mr. Lozano provided his license and registration, as well as paperwork in connection with his handicap permit and permit for window tints. (*See* DE 26-3, Exh. D, Axon Body Video 2016-10-12-0314, at 0:00–3:45.) Sgt. Dorilus noticed that Mr. Lozano's vehicle had a Massachusetts license plate, and asked him if he lived in Massachusetts, which Mr. Lozano confirmed. Sgt. Dorilus then asked Mr. Lozano to state his Massachusetts address. (*See id.*) Mr. Lozano refused, and instead pointed to the address on his license—a bit of gestural sarcasm, apparently—which was already in Sgt. Dorilus's hand. (*See id.*; *see also* DE 26-2, Dorlius SMF ¶ 27.) All the while, Defendants Hernandez and Goldate were present. (*See id.*)

After Sgt. Dorilus confirmed that Plaintiff's license was valid, he asked Mr. Lozano if he had consumed any alcoholic beverages, which Mr. Lozano denied. (DE 26-3, Exh. D., AXON_Body_Video_2016-10-12_0320 at 01:48–

---

[4]    Whether Defendant Dorilus observed Mr. Lozano driving into the Wawa parking lot is disputed.

07:00.) Sgt. Dorilus then stated that he was giving Mr. Lozano a field sobriety test because Mr. Lozano "reeked of alcohol." (*Id.*) Mr. Lozano denied having consumed alcohol. He refused to submit to a field sobriety test, stating that his injuries would physically prevent him from doing so. (*Id.*) Sgt. Dorilus then arrested Mr. Lozano, and Officer Hernandez transported Mr. Lozano to police headquarters.[5] (*Id.*, *see also* DE 24, Exh. D AXON_Body_Video_2016-10-12_0334.)

At police headquarters, Mr. Lozano was given two Alcotests (sometimes referred to as breathalyzer tests). Because of his asthma, he was not able to provide a sufficient breath sample to complete the tests. (DE 31-6, Exh. F, Axon Body Video 2016-10-12-0339; *see also* DE-8, Exh. H at 5.) Mr. Lozano asserts that he told the police officer administering the test that, for medical reasons, he would be unable to provide a sufficient breath sample. (See DE 31-6, Exh. F, Axon Body Video 2016-10-12-0339.) The municipal prosecutor testified that the police officer who administered the Alcotest "was sure that [Mr. Lozano] had some sort of medical issue preventing him from blowing into the Alco test and completing the Alco test." (DE 26-3, Exh. F at 3:17–5:19.) On the third Alcotest attempt, Mr. Lozano's asthma was triggered, and the police arranged for him to be transported to Trinitas Hospital. (*See id.*, Exh. B, Plaintiff Tr. at 80:1–17; 109:8–11.) After receiving medical attention, Mr. Lozano left the hospital around 5:37 AM on October 12, 2016. (*See id.*, Exh. E.) The Alcotest was never completed.

Based on the events of October 12, 2016, Plaintiff was charged with one count of driving while intoxicated (N.J. Stat. Ann. § 39:4–50) and one count of refusal to take breath test (N.J. Stat. Ann. § 39:4-50.2). (*See* DE 26-3 at p. 60,

---

[5]     There is a dispute as to whether the basis for Mr. Lozano's arrest was his refusal to submit to a field sobriety test. (*See* DE 26-2, Dorlius SMF ¶ 27.) A review of the video of Mr. Lozano's arrest confirms that it did follow Sgt. Dorilus's statement that Lozano seemed intoxicated and Lozano's refusal to submit to a field sobriety test. The actual charges filed by Sgt. Dorlius, however, were driving while intoxicated and refusal to submit to a breath test. Refusal to submit to a field sobriety test is not a criminal offense.

Exh. F at 3:12–16.) The charges were brought on October 12, 2016, the same day as the events, apparently by means of an ordinary ticket. (*See* Lozano Dep. p. 109, DE 26-3 Ex. p. 26; Municipal Ct. Tr. 3:12–16, DE 26-3 at p. 60; Elizabeth SMF ¶ 13, DE 27-3 ("Plaintiff was charged by Sergeant Dorilus with Driving Under the Influence, N.J.S.A. 39:4-50, and Refusal to Take Breathalyzer, N.J.S.A. 39:4-50.2.")

On December 22, 2016, both charges were dismissed in municipal court because the prosecutor had received medical records substantiating Mr. Lozano's claim that he was unable to provide sufficient breath samples for the Alcotests, and that he suffers from orthopedic disabilities that would preclude him from performing field sobriety tests. (Municipal Ct. Tr., DE 26-3 at pp. 60–62.)[6] Based on the prosecutor's recommendation, the court dismissed the charges against Mr. Lozano. (*Id.*; *see also* DE 31-11.)

---

[6]     This information—which of course was not possessed by the arresting officers—was as follows. Mr. Lozano suffers from the following disabilities:

- Severe Asthma with frequent attacks;
- impingement in his airway due to tracheostomy;
- herniated and bulging disks in lower back and neck;
- paralysis of the sciatic nerve;
- limited motion of his ankle;
- impairment of toes;
- limited flexion of both knees;
- segmental instability;
- lumbar radiculopathy
- total blindness in the left eye;
- impingement syndrome;
- abnormal gait;
- metal screws in his 2nd metatarsal bone in his foot;
- facial reconstruction to re-attach zygomatic bones and maxilla.

(DE 31-2) His doctor's note also states that "[i]t is established medically, that he cannot stand on one foot, nor balance, and walk in heel to toe fashion. He has limited ambulatory ability." The note does not state the origin of these disabilities, but in his deposition Lozano stated that he was medically discharged from the military based on

Mr. Lozano filed a Notice of Tort Claim with the City of Elizabeth Law Department, dated January 17, 2017. ("First Notice," DE 31-10 at pp. 2–5 (Exh. J).) Defendants, however, cited a second claim form, titled "Claim Form Required By the City of Elizabeth," dated March 10, 2017. ("Second Notice," DE 31-10 at pp. 6–11, DE 26-3 at p. 64, Exh. G.)

Mr. Lozano's Complaint has three counts:

> Count 1: False arrest, false imprisonment, and malicious prosecution in violation of the U.S. Constitution, the laws of the State of New Jersey, and common law;

> Count 2: Violations of Plaintiff's Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 (based on same facts as Count 1); and

> Count 3: Deprivation of proper medical care in violation of Plaintiff's Eighth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983.

All three counts are asserted against all defendants.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to

---

a stress fracture in his second metatarsal, seemingly incurred or aggravated during training. (*See* 31-3 at 10:20-11:9, 87:1-15.)  Mr. Lozano states that he also suffers from PTSD that is related to his service in the military. (*Id.* at 12:15-19.)

the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth the types of evidence on which a nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

## III.   DISCUSSION

The organization of the Complaint is loose and overlapping. *See* p. 6, *supra*. I have therefore organized my discussion issue-by-issue, rather than count-by-count. Section III.A addresses the Count 1 and Count 2 claims of false arrest, false imprisonment, and malicious prosecution insofar as they are asserted as constitutional claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6–1, *et seq.* ("NJCRA"). Section III.B addresses the Count 3 federal constitutional claim of deprivation of medical care. Section III.C addresses qualified immunity for all of the constitutional

claims. Section III.D addresses the Count 1 claims of false arrest, false imprisonment, and malicious prosecution insofar as they are asserted as state common law tort claims. Finally, Section III.E directs the issuance of an order to show cause why the claims against the State of New Jersey should not be dismissed.

### A. Counts One and Two: Constitutional Claims of False Arrest, False Imprisonment and Malicious Prosecution

#### 1. Governing law

Section 1983 does not create a substantive right but instead provides a remedy for the violation of rights created by federal law.[7] 42 U.S.C. § 1983; *Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S. Ct. 2427, 2432, 85 L.Ed.2d 791 (1985). A prima facie case under § 1983 requires a plaintiff to demonstrate that: (1) a person deprived him or her of a federal right; and (2) the person who deprived him or her of that right acted under color of state law. *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S. Ct. 1920, 1923 (1980)).

Like § 1983, the NJCRA "provides a means of vindicating substantive rights guaranteed by federal law and New Jersey's Constitution and laws and is not a source of rights itself." *Lapolla v. Cty. Of Union*, 449 N.J. Super. 288, 306, 157 A.3d 458, 469 (App. Div. 2017) (citing *Gormley v. Wood-El*, 218 N.J. 72, 98, 93 A.3d 344, 358 (2014)).[8] This district has repeatedly held that the NJCRA is

---

[7]   42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

[8]   NJCRA provides:

Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of

modeled on Section 1983, and is construed in parallel with it. *See, e.g., Verano v. Cty. of Essex*, No. CV166388KMJBC, 2017 WL 3086224, at *3 (D.N.J. July 20, 2017); *Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011).

There is no issue as to the second element, *i.e.,* that the defendants have acted under color of state law; the individual defendants are police officers who were acting in the course of their investigatory duties, and defendants State of New Jersey and City of Elizabeth are public entities. I therefore focus on the first element, *i.e.,* the deprivation of some right secured by the federal or state constitution.

Plaintiff Lozano alleges that Defendants violated his Fourth and Fourteenth Amendment rights, and their state constitutional analogues, when they arrested, detained, and prosecuted him for driving while intoxicated and refusing to take a breathalyzer test.

The Fourth Amendment protects the right of people to be secure in their persons against unreasonable seizures, and a person is considered "seized" whenever officials "restrain [an individual's] freedom of movement such that he is not free to leave." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917 (2017). A brief detention of an individual subsequent to his arrest "follows from the need to take the administrative steps incident to arrest." *Cherkas v. White*, No. CV 17-4498, 2018 WL 1991738, at *2 n. 2 (E.D. Pa. Apr. 27, 2018) (citing *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S. Ct. 854 (1975)). Thus a plaintiff's claim for "false imprisonment" in connection with arrest, while it may cover that brief subsequent detention, "is subject to the same analysis as [his or her] arrest" *Id. see also Wallace v. Kato*, 549 U.S. 384, 388–89, 127 S. Ct. 1091, 166 L.Ed.2d 973 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter"). Plaintiff's § 1983 claim for false arrest, false

those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

9

imprisonment, and malicious prosecution all require him to establish the absence of probable cause. *See Cherkas*, 2018 WL 1991738, at *2 (citing *James v. City of Wilkes-Barre*, 700 F.3d 675, 680, 682–83 (3d Cir. 2012) (false arrest); *Groman*, 47 F.3d at 636 (false imprisonment); *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (malicious prosecution)).[9]

Probable cause to arrest is determined by reviewing the "totality of the circumstances" by assessing the events leading up to the arrest, viewing the facts from the standpoint of an objectively reasonable police officer. *Phillips v. Cullen*, No. CIV. 09-1706 RBK AMD, 2011 WL 689602, at *6 (D.N.J. Feb. 18, 2011). The proper inquiry is not whether the person arrested in fact committed the offense, let alone whether the person is guilty beyond a reasonable doubt. The question is whether the arresting officer had probable cause *to believe* the person committed the offense. *See Groman*, 47 F.3d at 634.

In a constitutional malicious prosecution claim, probable cause requires that the facts were such that a person of "ordinary prudence" believed "on

---

[9]      The elements of the constitutional tort of false arrest are "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). The constitutional tort of false imprisonment, based on a detention pursuant to a false arrest, is essentially identical, although it covers the period of post-arrest detention—*i.e.,* "the period of incarceration lasting from the moment of arrest until the first legal action, e.g., an arraignment. . . ." *Id.; Zampetis v. City of Atl. City*, No. CV 15-1231 (NLH), 2015 WL 9294668, at *3 (D.N.J. Dec. 21, 2015).

The elements of the constitutional tort of malicious prosecution are that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)). These substantially overlap with the elements of the common law tort of malicious prosecution, *see* n. 12, *infra.* The distinction between them is that, for constitutional purposes, the tort requires a seizure that rises to the level of a Fourth Amendment deprivation of liberty. *See Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807 (1994); *Torres v. McLaughlin*, 163 F.3d 169, 175–76 (3d Cir. 1998). The parties do not focus on the issue, but further clarification may be required as to whether there was any custody *following* the institution of criminal charges.

reasonable grounds the truth of the charge at the time it was made." *Id.* (citing *Lind v. Schmid*, 67 N.J. 255, 263, 337 A.2d 365, 365 (1975)). Particularly as to a claim of malicious prosecution on multiple charges, a court must separately analyze whether probable cause existed as to each. *See Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) (citing *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)). The existence of probable cause is a factual issue; summary judgment may be granted on the probable cause issue only if the evidence presents no genuine dispute of material fact. *See Groman*, 47 F.3d at 635 (citing *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 191 (3d Cir. 1984) (abrogated on other grounds)).

### a. Individual Defendant Police Officers

#### i. <u>Defendant Dorilus</u>

I find that genuine disputes of material fact exist as to whether Sgt. Dorilus had probable cause to arrest Mr. Lozano or to charge him with one count of driving while intoxicated (N.J. Stat. Ann. § 39:4–50). The New Jersey drunk-driving statute "does not require a driver to be 'absolutely drunk' . . . it addresses a 'condition, short of intoxication . . . which so affects the judgment or control of a motor vehicle operator as to make it improper for him to drive on the highway." *Lang v. City of Jersey City*, No. A-0654-16T1, 2018 WL 2921879, at *5 (N.J. Super. Ct. App. Div. June 4, 2018) (citing *State v. Johnson*, 42 N.J. 146, 164 (1964)).

The testimony conflicts: the officer says Mr. Lozano displayed characteristics of intoxication, and Lozano says he did not.

On the night of the arrest, Sgt. Dorlius asked Mr. Lozano if he had consumed any alcoholic beverages, which Lozano emphatically denied several times. (*See* DE 26-3, Exh. D AXON_Body_Video_2016-10-12_0320 at 01:45– 2:45.) Mr. Lozano also testified during his deposition that he did not drink alcohol on that day. (*See* DE 31-1 at 91:17–22.) Before arresting Mr. Lozano, Sgt. Dorilus asked Lozano why he "reeked" of alcohol; Mr. Lozano responded, "I do not know what you are smelling, sir," which could reasonably be interpreted

as a denial. (*See* DE 26-3, Exh. D AXON_Body_Video_2016-10-12_0320 at 01:45–2:45.) It cannot be discerned from the video that Mr. Lozano was swaying, that he had a hard time holding his balance, or that his eyes were watery, as Defendants contend. (*See id*, Exh. D.) Obviously the video cannot settle the issue of whether Lozano smelled of alcohol.

Aside from one cantankerous refusal to orally answer Sgt. Dorilus's question regarding his address (Mr. Lozano just pointed to his license, already in Dorilus's hand), Mr. Lozano appropriately answered Dorilus's questions. He provided his license and registration, and displayed paperwork in connection with his handicap and tinted window permits. (*See id*.)

The remaining possible basis for probable cause is Mr. Lozano's refusal to submit to a field sobriety test.[10] A failed field sobriety test, not the case here,

---

[10]    Here is a description of the Standardized Field Sobriety Test ("SFST"):

The National Highway Traffic Safety Administration (NHTSA) defines the three parts of the SFST as follows (see NHTSA Highway Safety Desk Book):

The **horizontal gaze nystagmus (HGN) test**: Horizontal gaze nystagmus is an involuntary jerking of the eyeball which occurs as the eyes gaze to the side. Under normal circumstances, nystagmus occurs when the eyes are rotated at high peripheral angles. However, when a person is impaired by alcohol, nystagmus is exaggerated and may occur at lesser angles. An alcohol impaired person will also often have difficulty smoothly tracking a moving object. In the HGN test, the officer observes the eyes of a suspect as the suspect follows a slowly moving object such as a pen or small flashlight, horizontally with his eyes. The examiner looks for three indicators of impairment in each eye: if the eye cannot follow a moving object smoothly, if jerking is distinct and sustained nystagmus when the eye is at maximum deviation, or if the angle of onset of jerking is prior to 45 degrees of center. The subject is likely to have a BAC of 0.08 or greater if, between the two eyes, four or more clues appear. A 1998 validation study found that this test allows proper classification of approximately 88 percent of subjects. HGN may also indicate consumption of seizure medications, phencyclidine, a variety of inhalants, barbiturates, and other depressants.

In the **walk-and-turn test**, the subject is directed to take nine steps, touching heel-to-toe, along a straight line. After taking the steps, the suspect must turn on one foot and return in the same manner in the opposite direction. The examiner looks for eight indicators of impairment: if the suspect cannot keep balance while listening to the instructions,

may furnish probable cause for a DUI arrest. *United States v. Johnson*, 434 F. App'x 159, 162 (3d Cir. 2011). The significance of a refusal to undergo a field sobriety test, however, is less straightforward. Although not an offense in itself, refusal to take the test may be introduced in evidence at trial as "further evidence" of driving while intoxicated:

> Here, Bryant was observed driving erratically. Also, he smelled of alcohol, had difficulty walking, and his hand movements

---

begins before the instructions are finished, stops while walking to regain balance, does not touch heel-to-toe, uses arms to balance, steps off the line, takes an incorrect number of steps, or makes an improper turn. A 1998 validation study found that 79 percent of individuals who exhibit two or more indicators in the performance of the test will have a BAC of 0.08 or greater.

In the **one-leg stand test**, the subject is instructed to stand with one foot approximately six inches off the ground and count aloud by ones beginning with one thousand (one thousand-one, one thousand-two, etc.) until told to put the foot down. The officer times the subject for 30 seconds. The officer looks for four indicators of impairment including: swaying while balancing, using arms to balance, hopping to maintain balance, and putting the foot down. A 1998 validation study found that 83 percent of individuals who exhibit two or more such indicators in the performance of the test will have a BAC of 0.10 of greater.

There are many factors that might render a person unable to successfully complete one or more of the SFSTs. For instance, regarding the HGN test, the person asked to consent to such a test might be suffering from an eye disease or condition that affects his/her ability to see and consequently confound the test and results. Age, injury or disease could also affect the ability of a person to perform the one-leg stand test or the walk and turn test. As a general rule, an officer should ask the DUI suspect whether they can give any reason why they cannot perform the test and their answer should be carefully noted in the officer's report. Other disabilities, such as deafness, should be taken into consideration and noted as well.

AAA, DUI Justice Link, https://duijusticelink.aaa.com/issues/detection/standard-field-sobriety-test-sfst-and-admissibility/. The SFST is widely used in New Jersey. State of New Jersey Highway Safety Plan (Federal Fiscal Year 2019) p. 44, https://www.nj.gov/oag/hts/downloads/HSP_2019_web.pdf (last visited June 28, 2020) (noting that in New Jersey, "Officers have used Standardized Field Sobriety Tests (SFST) for more than 20 years to identify impaired drivers"). *See also* https://www.nj.gov/oag/hts/downloads/SFST_Procedures.pdf (instructions and card used to administer and record results of test); *Pennsylvania v. Muniz*, 496 U.S. 582, 585 & n.1, 110 S. Ct. 2638, 2641-42 & n.1 (1990) (brief description of three-part field sobriety test).

13

were slow and uncoordinated. Moreover, Bryant refused to perform any field sobriety tests, which may be considered as *further evidence* of his intoxication. *State v. Tabisz*, 129 N.J. Super. 80, 82-83, 322 A.2d 453 (App. Div. 1974).

*State v. Bryant,* 328 N.J. Super.  379, 383, 746 A.2d 44, 46 (App. Div. 2000) (emphasis added). Even as to the lower showing of probable cause to arrest, however, the cases have used refusal to submit to the field sobriety test as a sort of plus factor—not as constituting probable cause in itself. *See State v. Duda*, No. A-4373-13T1, 2015 WL 5943953, at *3 (N.J. Super.  Ct. App. Div. Oct. 7, 2015) (officer observed signs of intoxication, and defendant's refusal to submit to field sobriety tests was properly considered as "another factor"); *State v. Gillingham*, No. A-5030-12T2, 2014 WL 4674818, at *2 (N.J. Super.  Ct. App. Div. Sept. 22, 2014) (listing facts contributing to probable cause for arrest, such as flushed face, drooping and red eyes, the strong odor of alcohol, and an admission of drinking, and stating that "[i]n addition, a suspected drunk driver's refusal to perform any field sobriety tests may be considered as further evidence of his or her intoxication").

As noted above, each of the other claimed indicia of intoxication is the subject of factual dispute. Lozano's refusal to submit to the field sobriety test— which in any event has generally been regarded as a supplemental factor—is likewise mired in factual disputes. Mr. Lozano says that he told the officers he was physically incapable of performing the test. The officers knew at this point that he possessed a valid handicapped placard. His handicaps are such that a fact-finder could conclude that a reasonable officer would have noticed them unaided, or at least should have followed up once Lozano referred to them. (*See* n. 6, *supra*.) There is no assurance that the horizontal nystagmus test would be efficacious with respect to a person blind in one eye. There is no reason to think that a person with Mr. Lozano's orthopedic impairments could stand on one leg or perform the heel-to-toe maneuver. And the guidelines for the SFST state explicitly that the officer should ascertain whether any physical condition would impair or confound the results of the test, and note any such condition in the report. *See* n. 10, *supra*.

14

I do not now find that Sgt. Dorilus lacked probable cause based on the facts as he saw them. These factual submissions, however, suffice to create a genuine dispute as to whether Sgt. Dorilus had probable cause to believe that Mr. Lozano was in an intoxicated condition such that his judgment or control of a motor vehicle would have been impaired. There is thus an issue as to the appropriateness of arresting Mr. Lozano for or charging him with driving while intoxicated.

I also find a material factual dispute as to whether there was probable cause to charge Mr. Lozano with one count of refusal to take the breath test (N.J. Stat. Ann. § 39:4–50.2). New Jersey courts have found that two failures to provide an adequate breath sample may constitute a "refusal" to submit to a breath test that statute. *See State v. Ampofo*, No. A-4016-14T2, 2016 WL 3022594, at *8 (N.J. Super. Ct. App. Div. May 27, 2016). Still, the offense, it bears repeating, is *refusal,* not inability, to take the test. "[A]lleged physical impairment to complete a chemical breath test" is an issue as to which "a defendant bears the burden of proof," *State v. Monaco*, 444 N.J. Super. 539, 552, 134 A.3d 997, 1004 (App. Div. 2016).

There is sufficient evidence that Mr. Lozano did not refuse but submitted to taking two Alcotests, although he was physically unable to provide a sufficient breath sample to complete either. He then suffered an asthma attack and had to be taken to the hospital. Mr. Lozano asserts that even before the test, he informed the police officer administering it that he had a respiratory issue and would not be able to provide a sufficient breath sample. Later, Mr. Lozano submitted a letter from his doctor confirming that he was physically unable to take the test, which formed part of the basis for the municipal prosecutor's dismissal of charges. The municipal prosecutor confirmed that the officer administering the test believed Lozano had a respiratory problem that interfered with the test. Of course it remains possible that Sgt. Dorilus or other officers *thought* Mr. Lozano was malingering, at least up to the point that he suffered the asthma attack. But the police, not Mr. Lozano, are moving for summary judgment here. I cannot find, on a summary judgment standard, that

15

the officers, including Sgt. Dorilus, possessed probable cause sufficient to arrest or charge Mr. Lozano with refusal to take a breath test in violation of N.J. Stat. Ann. § 39:4–50.2.

I therefore deny the motion of Sgt. Dorlius for summary judgment on the constitutional claims in Counts 1 and 2.

ii.   Defendants Hernandez and Goldate

Defendants Hernandez and Goldate have filed separate motions for summary judgment. Both officers argue that probable cause existed to justify Plaintiff's arrest, detention, and prosecution. I have already determined that factual disputes preclude a finding that probable cause existed as a matter of law. These two defendants argue further, however, that they cannot be liable for false arrest or malicious prosecution because it was Sgt. Dorilus, not they, who arrested Mr. Lozano.

"In order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). The record demonstrates that both Defendants Hernandez and Goldate were present at the Wawa when Plaintiff was arrested. (*See* DE 31-6, Exh. F, Axon Body Video 2016-10-12-0320.)

As for Officer Hernandez, there is evidence of involvement in the detention of Mr. Lozano. While Hernandez was not the individual who actually placed the handcuffs on Mr. Lozano, he was the one who transported Lozano from the Wawa to the police station. As noted at pp. 9–10, *supra*, a person is "seized" when he is detained or unable to move as he wishes. Officer Hernandez was holding Mr. Lozano against his will, based on the fact of arrest, when transporting him to police headquarters. Transportation to headquarters, moreover, may be regarded as an integral component of the arrest. (It does not appear, however, that plaintiff claims Hernandez was involved in the events surrounding the breath test.) I will deny Defendant Hernandez's motion for summary judgment on Counts One and Two of the Complaint.

16

Defendant Officer Goldate, however, states without contradiction that he had "no interaction whatsoever with plaintiff," that he did not prepare any of the paperwork regarding Plaintiff's arrest, that he was not involved in transporting Plaintiff to the precinct, and was not involved in processing Plaintiff once he arrived at police headquarters. (*See* DE 25-4 at 11.) Neither the Complaint nor Plaintiff's papers in opposition to this motion attributes any specific acts to Officer Goldate. As a result, I find that Mr. Lozano has not raised a genuine factual issue suggesting that Officer Goldate has violated his constitutional rights, and I grant Goldate's motion for summary judgment on Counts One and Two of the Complaint.

In summary, I deny the motion of Officer Hernandez but grant the motion of Officer Goldate for summary judgment on the constitutional claims in Counts 1 and 2. [11]

### b. Defendant City of Elizabeth

The constitutional claims in Counts 1 and 2 are also asserted against the City of Elizabeth. Municipalities and local governments cannot be held liable under § 1983 on a *respondeat superior* theory, but may be held liable for a constitutional injury that resulted from a policy or custom the local government body has adopted. *See Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). The "official policy" requirement in *Monell* "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability

---

[11]     I also dismiss the parallel state tort claims of false arrest, false imprisonment, and malicious prosecution as against Goldate, for the same reasons. These state torts, like their constitutional versions, generally hinge on the lack of probable cause. *See Carollo v. Supermarkets Gen. Corp.*, 251 N.J. Super. 264, 269, 597 A.2d 1105, 1108 (App. Div. 1991). As to Goldate, however, no act is alleged by which he arrested, detained, or charged Lozano, whether with or without probable cause.

is limited to action for which the municipality is actually responsible"—acts, in other words, which municipality "has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80, 106 S. Ct. 1292, 1298 (1986) (emphasis in original). This District Court has consistently interpreted the NJCRA in parallel fashion to require a *Monell*-like showing. *See O'Neal v. Middletown Twp.*, No. 3:18-CV-5269-BRM-LHG, 2019 WL 77066, at *8 (D.N.J. Jan. 2, 2019) (citing cases).

In order to establish a prima facie case for *Monell* liability, the Plaintiff must "(i) demonstrate the existence of an unlawful policy or custom; (ii) that resulted in a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States; and (iii) that the policy or custom was the proximate cause of the alleged deprivation." *Maldonado v. City of Passaic Bd. Of Educ.*, No. CV1712245ESJAD, 2020 WL 289649, at *7 (D.N.J. Jan. 21, 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A government policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Bielevicz*, 915 F.2d 845, 850 (3d Cir. 1990)). In contrast, "a course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Id.*

Mr. Lozano has not alleged in his Complaint or established in his opposition papers any policy, custom, or practice adopted by the City of Elizabeth that resulted in a violation of his rights under the United States or New Jersey Constitutions. As a result, I will grant the City's motion for summary judgment on the constitutional claims in Counts 1 and 2 of the Complaint.

### B. Count 3: Federal and State Constitutional Claims of Inadequate Medical Care

Count 3 of the Complaint asserts a claim under 42 U.S.C. § 1983 that Defendants deprived Mr. Lozano of access to proper medical care and

18

treatment while he was in custody, in violation of his Eighth and Fourteenth Amendment rights.

Mr. Lozano's opposition papers fail to address Defendants' motions for summary judgment on this claim. Such a failure is not, in itself, sufficient reason to grant Defendants' motion on this claim. If a party fails to address the other party's properly supported assertion of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deems unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)). Mr. Lozano's claim substantively fails, however, as he has not brought forth any evidence to demonstrate that Defendants failed to provide him access to proper medical care.

Technically, this is not an Eighth Amendment claim; the Eighth Amendment applies to convicted persons. Claims brought by pretrial detainees fall under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2475 (2015). This Circuit evaluates Fourteenth Amendment claims for "inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment. In so doing, the Court notes that the Eighth Amendment standard acts only as a floor for due process inquiries under the Fourteenth Amendment." *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 314 (D.N.J. 2015), *aff'd,* 657 F. App'x 134 (3d Cir. 2016) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243 (1983); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)). In order to establish a claim for deprivation of medical care under the Fourteenth Amendment, Mr. Lozano must show "(i) a serious medical need, and (ii) acts or omissions by [] officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582; *see also Groman*,

47 F.3d at 637 ("Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs.").

I do not find that the Defendants' undisputed conduct in this case approaches the level of deliberate indifference to Mr. Lozano's medical needs. After Lozano arrived at police headquarters, the police attempted to administer two Alcotests to him. He was, however, unable to provide a sufficient breath sample because of his respiratory condition. (*See* DE 26-2 ¶¶ 30, 32; DE 31, CSF ¶¶ 51–55.) After the test, Mr. Lozano reported shortness of breath. Sgt. Dorilus immediately volunteered to retrieve Mr. Lozano's asthma pump from the car, but the police instead arranged for him to be transported to Trinitas Hospital. There, he was observed by medical professionals and then released at around 5:30 AM. *Id.* The officers sent Lozano to the hospital of their own volition; Plaintiff concedes that he did not request medical attention. There is no evidence that the police delayed unreasonably in providing Plaintiff necessary medical attention, or that the attention he received was substandard in any way. (*See* DE 26-2 ¶ 29; DE 31, Dorilus ¶ 29.)

I therefore grant summary judgment to Defendants on Count 3 of the Complaint.

### C. Qualified Immunity on Constitutional Claims

I next consider whether qualified immunity bars constitutional liability for the remaining individual defendants, Sgt. Dorilus and Officer Hernandez.

"The doctrine of qualified immunity shields law enforcement officers from personal liability for civil rights violations when the officers are acting under color of law in the performance of official duties. This protection extends to suits brought under 42 U.S.C.A. § 1983 and under New Jersey's analogue, the [CRA]," which allege "arresting or charging an individual" without probable cause. *Lang v. City of Jersey City*, No. A-0654-16T1, 2018 WL 2921879, at *3 (N.J. Super. Ct. App. Div. June 4, 2018) (citing *Morillo v. Torres*, 222 N.J. 104, 107–08, 117 (2015)); see also *James v. City of Wilkes-Barre*, 700 F.3d 675, 679

(3d Cir. 2012) ("The doctrine of qualified immunity insulates government officials who are performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'").

Whether an official is entitled to qualified immunity requires a two-part analysis: (1) whether the facts put forward by the plaintiff show a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151 (2001); *James*, 700 F.3d at 679. The Court of Appeals has held that even if there are fact questions as to the first, constitutional-violation prong, the court must decide whether the right was clearly established. *See Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 n.4 (3d Cir. 2015) ("[W]hile issues of fact may preclude a definitive finding on the question of whether the plaintiff's rights have been violated, the court must nonetheless decide whether the right at issue was clearly established.").

At the summary judgment stage, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *United States v. Diebold, Inc.*, 369 U.S. 654 (1962); *Saucier*, 533 U.S. at 201. Although the question of qualified immunity is a question of law, "a genuine issue of material fact will preclude summary judgment on qualified immunity." *Castellani v. City of Atl. City*, No. 13-5848, 2017 WL 3112820, at *7 (D.N.J. July 21, 2017) (internal citations and quotations omitted). The court must withhold qualified immunity at the summary judgment stage if, based on the plaintiff's adequately supported version of the facts, defendants violated the plaintiff's clearly established constitutional rights.

Regarding the first prong of qualified immunity, I have already determined that there are factual issues that preclude summary judgment for Sgt. Dorilus and Officer Hernandez on Plaintiff's constitutional false arrest/imprisonment and malicious prosecution claims. *See* Section III.A,

21

*supra.* Thus, taking the facts in the light most favorable to Plaintiff, I find a triable issue as to whether those two defendants violated his constitutional rights.

The second prong of the analysis asks whether the right was so clearly established that each of these officers should have known that he was committing a constitutional violation under the circumstances. In other words, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Lang*, 2018 WL 2921879, at *3 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *Kirk v. Newark*, 109 N.J. 173, 183–84 (1988)). For a Fourth Amendment claim, "[t]o determine the reasonableness of a seizure, the court asks whether the officer's conduct was objectively reasonable in light of the totality of the circumstances, without regard to the underlying intent or motivation." *Castellani*, 2017 WL 3112820, at *7 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989).

I must look at the totality of the circumstances, and, given the conflict in the evidence, I must consider the facts in the light most favorable to Plaintiff. Doing so, I cannot find, as a matter of law that these two officers' conduct was objectively reasonable.

The question of what qualifies as a "clearly established" right can be a knotty one, but not always:

> In rare cases, a plaintiff may show that a right is clearly established if the "violation [is] 'obvious.'" *See Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L.Ed.2d 583 (2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002)). In the excessive-force context, "obvious cases" are those that obviously violate *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989), and *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985). *See Brosseau,* 543 U.S. at 199, 125 S. Ct. 596. "[Graham] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." Id. at 198, 125 S.Ct. 596 (citation omitted). And Garner held that "[deadly] force may not be used unless it is necessary to prevent ... escape and the officer has probable cause

22

to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 471 U.S. at 3, 105 S. Ct. 1694.

*James v. New Jersey State Police*, 957 F.3d 165, 169 (3d Cir. 2020).

Here, the role of the "obvious" principle of law (the role filled by *Graham v. Connor* in the quotation above) is filled by the fundamental principle that an arrest or criminal charge must be supported by probable cause. *See* pp. 9–11, *supra*. Under Lozano's version of the facts, which is consistent with if not proven by the video, the application of that fundamental principle would be an "obvious" case. If a person has not drunk alcohol, is showing no obvious signs of intoxication, and does not smell of alcohol, then his arrest for drunk driving is not supported by probable cause. If he truthfully informs the officers that his respiratory condition prevents him from blowing a breathalyzer test, but is nevertheless compelled to do so and is taken to the hospital with an asthma attack as a result, then the subsequent lodging of a charge of "refusal" to take a breath test is not supported by probable cause. Of course, the officers have their side of the story to tell, too; for present purposes, however, there is a conflict in the evidence, one side of which would preclude qualified immunity.[12]

---

[12]   Setting aside the "obvious" case, the courts are wary of defining the applicable principle of law at too high a level of abstraction or generality, and that is where complexity creeps in. *See Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015). Thus there is a second and indeed more common means of showing that a constitutional right is "clearly established":

> But in most cases, a plaintiff must show that a right is clearly established because "the violative nature of particular conduct [was] clearly established." *Ziglar v. Abbasi*, ⸻ U.S. ⸻, 137 S. Ct. 1843, 1866, 198 L.Ed.2d 290 (2017) (quoting *Mullenix*, 136 S. Ct. at 308). In other words, "settled law," *Wesby*, 138 S. Ct. at 590, must "'squarely govern[ ]' the specific facts at issue," *see Kisela v. Hughes*, ⸻ U.S. ⸻, 138 S. Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) (quoting *Mullenix*, 136 S. Ct. at 309). The Supreme Court has explained that a plaintiff may satisfy this standard by "identify[ing] a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [constitutional provision at issue]." *White*, 137 S. Ct. at 552.

*James*, 957 F.3d at 169–70. Neither side points to a case that is truly on all fours with this one, particularly with the factual scenario as painted by the plaintiff.

Construing the disputed facts favorably to Plaintiff, I cannot find at this stage that these two officers are shielded from suit by qualified immunity.

### D. State Common Law Tort Claims

Count 1 asserts common law tort claims for false arrest, false imprisonment, and malicious prosecution[13] under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1–1, *et. seq.* ("NJTCA") against all Defendants.

To begin with, the NJTCA does not impose liability on the City of Elizabeth for these intentional torts of its employees. A municipality does not have the capacity to commit an intentional tort on its own. *See Jones v. City of Newark*, No. CIV.A. 04-4052 GEB, 2010 WL 3155013, at *2 (D.N.J. Aug. 9, 2010) (citing *Baldani v. Twp. of Millburn*, No. 07–4792, 2008 WL 4512939, at *8 (D.N.J. Sept.25, 2008) (collecting cases)). It is true, of course that the NJTCA

---

[13]    The elements of the state law torts of false arrest and false imprisonment overlap those of their federal counterparts. *See* n. 9, *supra*. The torts also overlap each other, to the point that New Jersey courts have viewed false arrest and false imprisonment as "different names for the same tort." *Price v. Phillips*, 90 N.J. Super. 480, 484, 218 A.2d 167, 169 (App. Div. 1966) (citing Prosser on Torts (3d ed. 1964), §12, p. 54; *see also Earl v. Winne*, 14 N.J. 119, 101 A.2d 535 (1953)).

"False arrest, or false imprisonment, is the constraint of the person without legal justification. *Pine v. Okzewski*, 112 N.J.L. 429, 431, 170 A. 825 (E. & A.1934). The tort requires an arrest or detention of the person against his or her will; and lack of proper legal authority or "legal justification." *Barletta v. Golden Nugget Hotel Casino*, 580 F.Supp. 614, 617 (D.N.J.1984)." False imprisonment, too, is complete when one unlawfully detains another so as to restrain that person's freedom of movement. *See DelaCruz v. Borough of Hillsdale*, 365 N.J. Super. 127, 149–50, 838 A.2d 498, 511–12 (App. Div. 2004), *aff'd in part, rev'd in part,* 183 N.J. 149, 870 A.2d 259 (2005).

Although arrests may be wrongful because they fail to conform to state regulations, "[t]he false arrest cases typically deal with situations where there was not probable cause for the arrest." *Bauer v. Borough of Cliffside Park*, 225 N.J. Super. 38, 47, 541 A.2d 719, 724 (App. Div. 1988) (noting that the probable cause "is a defense to false arrest if it serves to validate the arrest."); *see also Mesgleski v. Oraboni*, 330 N.J. Super. 10, 24, 748 A.2d 1130, 1138–39 (App. Div. 2000).

The state common law tort of malicious prosecution requires that the defendant "(1) instituted proceedings (2) without probable cause and (3) with legal malice; and (4) the proceedings terminated in [plaintiff's] favor." *Wiltz v. Middlesex Cnty. Office of Prosecutor*, 249 F. App'x 944, 950 (3d Cir. 2007) (citing *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 248 (3d Cir. 2001)). Whether under Section 1983 or state law, the gist of malicious prosecution is that the defendants have instituted a criminal proceeding without probable cause. *See Wiltz*, 249 F. App'x at 949.

accommodates *respondeat superior* liability by rendering a public entity "liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J. Stat. Ann. § 59:2-2. "However, an exception exists [under the NJTCA] for public entities where the act or omission of the employee constitutes 'a crime, actual fraud, actual malice, or willful misconduct.'" *Ianuale v. Borough of Keyport*, No. CV169147FLWLHG, 2018 WL 5005005, at *12 (D.N.J. Oct. 16, 2018) (Wolfson, C.J.) (quoting N.J. Stat. Ann. § 59:2-10). Applying that exception, *Ianuale* dismissed intentional tort claims, including abuse of process and malicious prosecution, against a New Jersey municipality.[14]

Summary judgment is therefore granted on these state-law tort claims as to the City of Elizabeth. In addition, I have already dismissed all of the common-law tort claims against Officer Goldate. *See* p. 17, *supra*. The remainder of the discussion in this section, then, applies to the remaining defendants, Sgt. Dorilus and Officer Hernandez.

---

[14]     *See id.* ("Accordingly, even had the Court found that Officer Defendants' conduct sufficient to support a claim for the intentional tort of assault and battery, malicious prosecution, [or] abuse of process, the defendant municipality, Keyport, could not, as a matter of law, be held liable under a theory of respondeat superior.") A long line of cases is in accord as to the dismissal of *respondeat superior* claims against municipalities based on their employees' commission of intentional torts. *See Hickman v. Borough*, No. CV153578FLWLHG, 2017 WL 1197806, at *15 (D.N.J. Mar. 31, 2017) ("[E]ven had the Court found Patrolman Werner's conduct sufficient to support a claim for the intentional tort of assault and battery, the defendant municipality, Freehold Borough, could not, as a matter of law, be held liable under a theory of respondeat superior."); *Sims v. Tropicana Entm't, Inc.*, No. 13-1981, 2016 WL 4801431, at *3 (D.N.J. Sept. 9, 2016) ("Assault and battery are torts that require a showing of intentional or willful misconduct. Therefore, the [municipality] is immune from liability for the assault and battery claims."); *Matos v. City of Camden*, No. CIV. 06-205-NLH-JS, 2009 WL 3756652, at *2 (D.N.J. Nov. 9, 2009) (dismissing indemnification claim against municipality for police officer's commission of tort of assault and battery); *Soto v. City of Newark*, 72 F. Supp. 2d 489 (D.N.J.1999) (holding that city could not be liable for employee's intentional infliction of emotional distress); *see also McDonough v. Jorda*, 519 A.2d 874 (N.J. Sup. Ct. App. Div.1986) (holding that municipality could not be held liable for assault and battery by one of its police officers), *certif. denied*, 540 A.2d 1282 (N.J.1988), *cert. denied*, 489 U.S. 1065 (1989).

These defendants argue that the state tort claims must be dismissed because Plaintiff failed to give timely and proper pre-suit notice as required by the NJTCA.[15] I agree in part; the false arrest and imprisonment tort claims are dismissed on these grounds, but the malicious prosecution tort claim is not.

The NJTCA requires that notice of a claim of injury against a public entity be provided "no later than the 90th day after accrual of the cause of action." N.J. Stat. Ann. § 59:8–8. The NJTCA notice requirement has several rationales. It "allows the public entity time to review the claim and to promptly investigate the facts and prepare a defense; provides them an opportunity to settle meritorious claims before bringing suit; grants them an opportunity to correct the conditions which gave rise to the claim; and allows them to inform the State in advance as to the expected liability." *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 354 (D.N.J. 2015) (citing *Velez v. City of Jersey City*, 180 N.J. 284, 290, 850 A.2d 1238 (2004)).

Failure to comply with the NJTCA notice requirement precludes recovery against both a public employee and a public entity. *See Velez*, 180 N.J. at 296, ("Although we note that the better practice is for a potential plaintiff to give notice to both the public entity and the public employee, N.J. Stat. Ann. § 59:8–8 only requires that notice be given to the public entity.). A plaintiff who fails to file such a claim within the 90-day period is "forever barred from recovering against a public entity or public employee." N.J. Stat. Ann. § 59:8–8.

There is a potential avenue of relief from the 90-day deadline, although it has not been invoked here. A plaintiff can file a motion with the court requesting permission to file a late notice of claim, which will be granted if "extraordinary circumstances" excuse late filing. N.J. Stat. Ann. § 59:8–9. An application to file a late notice must be filed within one year after the accrual of the claim. *See id.*

---

[15]     The pre-suit notice requirement of the NJTCA applies only to the common law tort claims, not to the claims under the federal or State constitutions. *See Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006).

As stated above, the NJTCA's 90-day deadline runs from the "accrual" of a cause of action. It is well settled that claims of false arrest/imprisonment accrue on the date of the arrest. *See Bayer v. Twp. of Union*, 414 N.J. Super. 238, 259–60, 997 A.2d 1118, 1130 (App. Div. 2010) (citing *Bauer v. Borough of Cliffside Park*, 225 N.J. Super. 38, 47, 541 *A*.2d 719 (App. Div.), *certif. denied*, 113 N.J. 330, 550 A.2d 447 (1988)). Mr. Lozano was arrested on October 12, 2016. Thus a notice of tort claim for false arrest/imprisonment was required to have been filed by January 10, 2017. It was not. *See infra.*

In contrast, a claim for malicious prosecution does not accrue until there is a "final" and "dispositive" termination of the underlying criminal proceedings in favor for the accused, "such that it is no longer possible for an appeal or for a retrial of the criminal proceedings." *Michaels v. State of N.J.*, 955 F. Supp. 315, 329 (D.N.J. 1996). The counts of driving while intoxicated (N.J. Stat. Ann. § 39:4–50) and refusal to take the breath test (N.J. Stat. Ann. § 39:4–50.2) were both finally dismissed on December 22, 2016. (*See* DE 31-11.) As a result, a notice of claim for malicious prosecution was required to have been filed by March 22, 2017.

By letter dated January 17, 2017, Mr. Lozano's counsel notified Defendants (and others) that Lozano intended to file a claim for damages. (The "First Notice," DE 31-10 at 2.) This First Notice described the facts surrounding the allegedly wrongful arrest, as well as the breathalyzer test and asthma attack. It stated that "[a]s a result of these false accusations the plaintiff was wrongfully arrested, detained, and subjected to prosecution." (*Id.* at 3.) By letter dated February 15, 2017, the attorney for Defendant City of Elizabeth replied. This letter informed Mr. Lozano's counsel that the City had received the "Notice of Claim you have served on behalf of Geronimo Lozano." The same letter informed Lozano's counsel that he would shortly be receiving a blank "City of Elizabeth Notice of Claim form," and directed him to fill out the form and return it to the City, its counsel, and its third party adjuster. (*Id.* at 5.) Mr. Lozano returned the filled-out form, titled "Claim Form Required By the City of

27

Elizabeth Pursuant to N.J. Stat. Ann. § 59:1–1" (the "Second Notice"). (*Id.* at 6.) The Second Notice is dated March 10, 2017.

Mr. Lozano is barred from pursuing his common law false arrest and false imprisonment claims because he did not file a notice within 90 days of the accrual of those claims. As noted, the notice as to these claims was due January 10, 2017. The First Notice was not furnished to the City, however, until (at the earliest) January 17, 2017—only seven days late, but late nonetheless. Mr. Lozano did not file a motion for late notice pursuant to N.J. Stat. Ann. § 59:8–9 within a year of accrual, or at any time thereafter.

Whether Mr. Lozano is barred from pursuing his common law malicious prosecution claim is a less straightforward issue. As to malicious prosecution, the date of the First Notice, January 17, 2017, was well within the applicable deadline of March 22, 2017. The City explicitly acknowledged in the attorney's responding letter that it interpreted this First Notice letter as a "Notice of Claim." That same letter, however, required the Plaintiff to file a Claim Form on the form provided by the City. (DE 31-10 at 5.) The City was within its rights in doing so; NJTCA allows a public entity to "adopt forms specifying information to be contained in claims filed against it or its employee." N.J. Stat. Ann. § 59:8–6. Plaintiff did fill out the form, complying with the City's legitimate demands for additional information. Plaintiff dated the form as of March 10, 2017 ("Second Notice," DE 31-10 at 5), and mailed it on March 16, 2017 (DE 23 at 65)—still well within the March 22, 2017 deadline for malicious prosecution.[16]

The City states that the Second Notice, on the form it prescribes, is the effective one. It contends that although the First Notice arguably encompassed the tort of malicious prosecution ("the plaintiff was wrongfully . . . subjected to

---

[16] It is reasonably presumed that a mailed letter within New Jersey would arrive within three days. The City claims that the First Notice, mailed January 17, 2017, arrived on February 8, 2017, but for purposes of summary judgment concedes the earlier date. The Second Notice, mailed March 16, 2017, is stamped "Received" by the Law Department on March 31, 2017. The City does not press the point as to the actual date of receipt or any internal delays in processing mail.

prosecution"), the Second Notice did not. Therefore, the City argues, it is ineffective as notice of a claim of malicious prosecution.

I disagree. The First Notice and Second Notice, particularly when taken together, comply with the NJTCA notice provision. "The NJTCA does not require a recitation of 'the legal theories a claimant will raise.' *Lebron v. Sanchez*, 407 N.J. Super. 204, 219, 970 A.2d 399 (App. Div. 2009). However, it does require the notice to include 'the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted,' and 'a general description of the injury, damage or loss incurred....' N.J.S.A. 59:8–4." *Bullock v. Cabasa*, No. CIV. 10-1412 RBK/AMD, 2013 WL 6253432, at *8 (D.N.J. Dec. 4, 2013).

These Notices supply the required information. *A fortiori,* they surpass the threshold of "substantial compliance" with the NJTCA notice provision:

> The doctrine of substantial compliance can apply to NJTCA notice in the limited circumstances where "the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." *D.D. v. Univ. of Med. and Dentistry of N.J.*, 213 N.J. 130, 159, 61 A.3d 906 (2013) (citations omitted).

*Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 746 (D.N.J. 2016).

*Panarello* is, on its face, unfriendly to the Plaintiff's position here. In that case, the notice cited the facts surrounding the claimant's arrest. This was insufficient, held District Judge Kugler of this Court, to alert the defendants to claims arising from facts that occurred *after* the arrest, including malicious prosecution.

Here, however, there is more. Mr. Lozano's First Notice fairly alerted the City to a malicious prosecution claim; it described the events, including post-arrest events, and stated that the claimant was "wrongfully arrested, detained, and subjected to prosecution." (DE 31-10 at 3.) The City itself, in reply correspondence, acknowledged this document as a Notice of Claim, even as it required that Lozano submit the additional prescribed form. That claim form—Lozano's Second Notice—gave a more truncated description of the facts. It did, however, cite the underlying facts, describing the allegedly wrongful arrest, the

29

administration of the breath test, and the asthma attack. After describing the lack of basis for the arrest, it stated, like its predecessor, that "[a]ll charges were subsequently dismissed against the claimant." (DE 31-10 at 11.) Significantly, the Elizabeth claim form does not require a specification of causes of action (and neither does the statute, *see supra*). The answers just described were submitted, not as a list of causes of action, but in response to Item 4, which requests a "[g]eneral description of the injury, damage or loss incurred to date." (DE 31-10 at 6.)

The First and Second Notice, particularly when taken together, adequately placed the City on notice. They did not specify particular causes of action—and they were not required to. *See Lebron, supra.* The Notices described the underlying circumstance, consisting of an arrest that allegedly had no basis in fact, as well as the post-arrest breathalyzer test and asthma attack, stated that the plaintiff was "wrongfully . . . subjected to prosecution" (First Notice only), and stated that the resulting charges were subsequently dismissed (both Notices). That information meets the statutory requirement that "the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," and "a general description of the injury, damage or loss incurred . . . ." N.J. Stat. Ann. § 59:8–4. These Notices adequately placed the City on notice that the plaintiff disputed the validity of the arrest, the post-arrest events surrounding the breathalyzer test, and the charges, which were dismissed. After receiving the First Notice, the City requested additional information, but it would not have been justified in assuming that the Second Notice encompassed a different claim or claims from those specified in the First.[17]

---

[17]   Alternatively, if this were truly a defective Notice, the "substantial compliance" doctrine would require the Plaintiff to show:

> "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute."

As a result, summary judgment is granted as to the Count 1 common law state tort claims for false arrest and false imprisonment, for lack of a timely notice under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1–1, *et. seq*. As for the tort of malicious prosecution, I find that there was substantial compliance with the notice provision, and as to that tort only, summary judgment is denied.

### E. State of New Jersey

The State of New Jersey, also named as a defendant, has not moved for summary judgment. I am, simultaneously with this Opinion, issuing an Order that the Plaintiff, within 30 days, Show Cause in writing why

(a) the constitutional claims against the State should not be dismissed because a State is not a "person" amenable to suit under 42 U.S.C. § 1983 or the NJCRA, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–66, 109 S. Ct. 2304, 2308–10 (1989); *Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012); *Richardson v. New Jersey*, No. CV 16-135 (KM)(JBC), 2019 WL 6130870, at *7 (D.N.J. Nov. 18, 2019); and

(b) the remaining tort claims against the State should not be dismissed because the State is not vicariously liable for intentional torts of public employees, *see Hoag v. Brown*, 397 N.J. Super. 34, 54, 935 A.2d 1218, 1230 (App. Div. 2007) (citing *McDonough v. Jorda*, 214 N.J. Super. 338, 350, 519 A.2d 874 (App. Div. 1986)); *Panarello*, 160 F. Supp. at 767 (N.J. Stat. Ann. § 59:2-10 bars vicarious municipal liability for assault and battery, false arrest).

---

*Panarello*, 160 F. Supp. 3d at 746 (quoting *Ferreira v. Rancocas Orthopedic Assocs.*, 178 N.J. 144, 151, 836 A.2d 779 (2003) (emphasis added) (internal quotations and citations omitted)). Here, there is no persuasive showing of prejudice, in that even if the Second Notice is deemed to control legally, the two Notices together informed the City and its counsel of the nature of Plaintiff's complaint and the surrounding facts; the First and Second Notice constitute reasonable steps to comply; the general statutory purpose of permitting the City to preserve evidence, prepare a defense, and assess liability has been fulfilled; reasonable, if not perfect, notice has been given; and the minor differences between the two Notices are easily attributable to a normal scrivening slip-up.

Failure to respond will be deemed consent to dismissal of the State as a defendant.

## IV.   CONCLUSION

For the reasons stated in this Opinion, I will deny in part and grant in part defendants' motions for summary judgment (DE 24, 25, 26, 27) as follows:

1. As to the constitutional claims under 42 U.S.C. § 1983 and the NJCRA in Counts 1 and 2, I will **DENY** the motions for summary judgment filed by Defendants Hernandez (DE 24) and Dorilus (DE 26).

2. As to the constitutional claims under 42 U.S.C. § 1983 and the NJCRA in Counts 1 and 2, I will **GRANT** the motions for summary judgment filed by Defendant Goldate (DE 25) and the City of Elizabeth (DE 27).

3. As to the Section 1983 constitutional claim of denial of medical care in Count 3, I will **GRANT** all four motions for summary judgment (DE 24, 25, 26, 27).

4. As to the common law tort claims in Counts 1 and 2, I will

   (a) **GRANT** the motions of Goldate (DE 25) and the City of Elizabeth (DE 27) in their entirety;

   (b) **GRANT** the motions of Defendants Hernandez (DE 24) and Dorilus (DE 26) as to the tort claims of false arrest/false imprisonment only; and

   (c) **DENY** the motions of Defendants Hernandez (DE 24) and Dorilus (DE 26) as to the tort claim of malicious prosecution.

As among the four movants, the net result is as follows: The constitutional claims of counts 1 and 2 and the malicious prosecution tort claim remain as against Sgt. Dorilus and Officer Hernandez. All claims are dismissed as against the City and Goldate.

An appropriate Order follows. Simultaneously, I will issue an Order to Show Cause why the State of New Jersey should not be dismissed from this action.

Dated: June 29, 2020

/s/ Kevin McNulty

_____

**HON. KEVIN MCNULTY, U.S.D.J.**